UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ALLAN A. ASH,                                            :
                                                         :
                                    Plaintiff,           :
                                                         :
- against -                                              :
                                                         :
GEOFFREY A. RICHARDS,                                    :
                                                         :
                                    Defendant.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 10, 2013

12 Civ. 8044 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

This is an intrafamily dispute between a 96 year old grandfather, Allan A. Ash ("Ash"),

who lives in New York, and his grandson, Geoffrey A. Richards ("Richards"), who lives and

works in Chicago, Illinois, over a $950,000 check that Ash sent from New York to Richards in

Chicago.  Richards deposited the check in his bank in Illinois.  Later, Ash asked Richards to

return the money, but Richards refused.

Ash then commenced this action in New York State Supreme Court on October 18, 2012,

and Richards removed the action to this Court on November 5, 2012.  On December 17, 2012,

Richards moved to dismiss the complaint pursuant to the Federal Rule of Civil Procedure

12(b)(2) for lack of personal jurisdiction, and Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief can be granted.  The parties agree that there is no basis

for general jurisdiction, and if jurisdiction exists it must be based on New York's long arm

statute.  (N.Y. CPLR § 302 (a)(1),(2) and (3).)  For the following reasons, the Court GRANTS

Defendant's motion to dismiss for lack of jurisdiction.

## BACKGROUND[1]

### A.  The Parties' Dispute

After being hospitalized for health problems in late 2011, Ash, who is 96 years old, began

putting his affairs in order.  Ash had a telephone conversation with Richards who was in

Chicago. They discussed the $950,000, $200,000 of which was to be "a token of

acknowledgement of the efforts that Mr. Ash expected that Mr. Richards would undertake

following Mr. Ash's death, in connection with assisting in the winding up [of] Mr. Ash's affairs,

arranging for funeral services, and so forth."  (Compl. ¶ 22.)  On or about March 12, 2012, Ash

mailed Richards a personal check for $950,000.  Ash wrote the word "gift" on the memo line of

the check.  The parties agreed that should Ash survive his health issues and request the return of

any portion of that amount, Richards would be required to do so.  Ash wrote the check in New

York and mailed it to Richards in Chicago; Richards deposited the check at a bank in Chicago,

where he continues to retain the funds.

Shortly after sending Richards the check, Ash "concluded that the demands of Mr.

Richards' job, the extensive travel and lengthy periods of time that he was away on business, and

the fact that Mr. Richards lives in Chicago, made Mr. Richards an unsuitable choice to handle

Mr. Ash's affairs after his death."  (Compl. ¶ 23.)  Ash decided that he wanted another grandson

to handle his affairs instead.  Consequently, in late March or early April 2012, Ash telephoned

Richards at his office in Chicago and asked for the return of $200,000 of the $950,000.  During

the conversation, Richards suggested that the pair meet in person to discuss the matter further.  In

late spring of 2012, the two met in Ash's apartment in Manhattan and Ash again requested that

---

[1] Except otherwise noted, the following facts are drawn from the Complaint, and are accepted as true for purposes of
this motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Richards return $200,000.  Richards refused.[2]  By email sent October 17, 2012, but dated

October 18, Ash requested the return of the entire balance.  Richards failed to respond.  (Poler

Dec. Ex. E.).  Ash then commenced this action on October 18, 2012.

Ash asserts common law causes of action for (1) breach of contract; (2) breach of

fiduciary duty; (3) conversion; and (4) unjust enrichment.  Ash alleges $950,000 in damages,

seeks the imposition of a constructive trust, and requests punitive damages arising from the

breach of fiduciary duty and conversion claims.

## ANALYSIS

### I.  Personal Jurisdiction

On a motion to dismiss, the plaintiff bears the burden of showing that the court has personal

jurisdiction over the defendant, but need "only make a prima facie showing that the court

possesses personal jurisdiction over the defendant."  DiStefano v. Carozzi N. Am., Inc., 286 F.3d

81, 84 (2d Cir. 2000).  A party makes a prima facie showing by pleading "facts which, if true,

would support the court's exercise of jurisdiction."  New Moon Shipping Co., Ltd. v. MAN B &

W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997).  In diversity cases involving non-resident

defendants, federal courts first must analyze whether the forum state's jurisdictional statute

permits the exercise of personal jurisdiction.  If so, the court's next step is to determine whether

---

[2] Richards disputes the truth of Ash's version of facts.  Richards argues that he initially refused to return the
$200,000 on the phone while he was in Chicago.  He relies on his own declaration as well as the October 17, 2012
letter in which Ash accuses Richards of reneging over the phone.  (Poler Dec. Ex. E, Richards Dec. ¶ 12.)  Ash relies
on his own declaration that the first time Richards refused to return the money was when he was physically in New
York.  (Ash Dec. ¶ 16.)  For the purposes of the motion to dismiss for personal jurisdiction, in the absence of an
evidentiary hearing, the Court assumes the truth of the facts in the complaint and Ash's declaration.  See Ball v.
Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).  The pleadings and affidavits must be
construed in the plaintiff's favor, and all inferences must be drawn in his favor.  Bluestone Cap. Partners, L.P. v.
MGR Funds Ltd., 1999 U.S. Dist. LEXIS 7518, at *3 (S.D.N.Y. May 20, 1999).  This is true notwithstanding the
presentation of contradictory materials by the moving party.  Marine Midland Bank, N.A. v. Miller, 664 F.2d 899,
904 (2d Cir. 1981).

such exercise comports with due process.  Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

## II.  CPLR § 302(a)(1): Transacting Business

N.Y. CPLR Section 302(a)(1) authorizes a court to "exercise personal jurisdiction over any non-domiciliary . . . who . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  "Section 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff, or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York."  Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983) (internal citations omitted).  One "transacts business" in New York when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws."  CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (quoting McKee Electric Co. v. Rauland-Borg Corp., 229 N.E.2d 604, 607 (N.Y. 1967)) (alterations in original).  If the defendant has transacted business in the state, the claim must arise out of that activity, such that there is an "articulable nexus between the business transacted and the cause of action sued upon."  McGowan v. Smith, 419 N.E.2d 321, 323 (N.Y. 1981). "[O]ne transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 43 (N.Y. 1988).[3]

---

[3] Ash does not dispute that at least a portion of the $950,000 was a gift to Richards—even if under protest that it was a conditional gift that is returnable to him. The Court is skeptical, with respect to this amount that any money given without an expectation of anything in return can qualify as transacting "business" in any sense of the term. Nonetheless, the Court relies on other bases for its conclusion that 302(a)(1) does not confer jurisdiction.

Ash argues that the Court has jurisdiction under CPLR § 302(a)(1) because (1) Richards contracted to repay money in New York; (2) Richards accepted the funds from a check executed in New York and drawn from a New York bank, and (3) Richards traveled to New York to discuss the repayment of $200,000.  (Compl. ¶ 15.)  These facts, however, do not satisfy either the "transacting business" or "contracting anywhere to supply . . . services in [New York]" requirements of § 302(a)(1).

First, the fact that Richards was in Ash's apartment in New York when he initially refused to repay $200,000 is not jurisdictionally significant.  Accepting that assertion as true, that conversation was not part of the negotiation, execution or performance of the reached agreement, but was rather an "attempt[ ] to adjust a dispute as to performance of a contract or to discuss differences under an existing contract" to which no "jurisdictional relevance" attaches.  Cutco Indus., 806 F.2d at 368; see General Instrument Corp. v. Tie Mfg., Inc., 517 F. Supp. 1231, 1232 (S.D.N.Y. 1981) (finding that defendants' physical presence in New York to attempt to negotiate a settlement involving an already existing contract did not confer jurisdiction).  Similarly, Richards visited New York to attempt to "convince [Ash] not to take $200,000 back . . . ." (Poler Dec. Ex. E.)  At that point, the parties had already formed their earlier agreement over the phone while Richards was in Chicago, Richards had deposited the check in Chicago, and retained the funds in his Chicago bank account even after Ash demanded repayment from Richards who was in Chicago.

The fact that Ash's check to Richards was drawn on a New York bank is not jurisdictionally significant.  Richards never bargained for or benefited from the protection of New York's commercial laws—the connection to New York is merely incidental to the fact that the plaintiff resides and maintains a bank account in New York.  Further, even if, as Ash contends, Richards

had specifically agreed to return any amount requested to New York, an obligation "made

payable in New York cannot alone subject the borrower to personal jurisdiction in New York."

Glass v. Harris, 687 F. Supp. 906, 908 (S.D.N.Y. 1988).

    Although there is no generic list of activities that may be considered transacting business,

"the case in which the defendant was physically present in New York at the time the contract

was made, in addition to sufficient other contacts, is … 'the clearest sort of case in which [New

York] courts would have 302 jurisdiction.'" Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d

55, 60 (2d Cir. 1985) (citation omitted) (alteration in original).  When the parties initially had

their telephone conversation concerning the $950,000, Richards was in Illinois, not New York.

Ash mistakenly relies on his own presence in New York during the conversation, but that is not

the correct inquiry.  See Maranga v. Vira, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) ("New

York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis

of defendant's communication from another locale with a party in New York.") (quoting Beacon

Enters., Inc., 715 F.2d at 766).  Ash's telephone call from New York to Chicago does not

establish that Richards purposefully projected himself into the state.

    Ash makes much of the fact that $200,000 was to serve as compensation for services that

Richards would render in New York to help manage Ash's estate and funeral affairs.  The Court

is not persuaded that any theory of relief in fact shares an "articulable nexus" with Richards'

agreement to provide services. McGowan, 419 N.E.2d at 323.  It is not clear that Richards had

to be in New York to make final arrangements for Ash.  Further, Ash does not allege that

Richards ever refused to provide the promised services, nor does he identify any such refusal as

the reason he currently seeks repayment.[4]  In other words, Ash has not alleged an affirmative act

or wrongful conduct by Richards in connection with the services that would make his agreement

to provide them relevant.  Ash also does not allege that the remaining funds—$750,000—are in

any way connected to these services, nor can he logically take that position.  His claim that he

made a revocable *causa mortis* gift nonetheless assumes intent to convey a present interest that is

inconsistent with any expectation that Richards would perform any services in return.

Champney v. Blanchard, 39 N.Y. 111, 116 (N.Y. 1868) (holding that a gift *causa mortis* requires

a clearly expressed intent to give "*in presenti*").  Even if Richards' promise to perform services

in New York constitutes sufficient New York-based activity, Ash has failed to meet the

additional element that "the claim asserted must arise from that business activity."  Sole Resort,

S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (citing McGowan,

419 N.E.2d 321 (N.Y. 1981)).

###### III. CPLR § 302(a)(2): Tort Within the State

N.Y. CPLR 302(a)(2) provides that courts may exercise personal jurisdiction "over any non-

domiciliary . . . who . . . commits a tortious act within the state . . . .".  Breach of contract claims

are not tort causes of action and do not give rise to jurisdiction under either § 302(a)(2) or §

302(a)(3).  Amigo Foods Corp. v. Marine Midland Bank-New York, 348 N.E.2d 581, 584 (N.Y.

1976) ("We find no merit in the . . .  argument that a breach of a contract constitutes a tortious

act and may form a basis for long-arm jurisdiction under [CPLR § 302(a)(2) and (3)].").

Conversion, unjust enrichment and breach of fiduciary duty are tort claims, see Landau v. New

---

[4] Rather, the Complaint specifically alleges that Ash was the party who changed his mind and "had made a mistake
in entrusting Mr. Richards with handling his affairs after his death."  (Compl. ¶ 23.)  The October 17, 2012 demand
states the same, that "shortly after making the conditional gift to you, I came to the conclusion that you are not able
to attend to my matters on my death because of your work in Chicago and travel all around the United States on
your business."  (Poler Dec. Ex. E.)

Horizon Partners, Inc. et al., 2003 U.S. Dist. LEXIS 15999, at *21 (S.D.N.Y. Aug. 22, 2003),

Hennigan v. Taser Int'l, Inc., 2001 U.S. Dist. LEXIS 1857, at *10-11 (S.D.N.Y. Feb. 23, 2001);

but these claims also fail to provide jurisdiction because Ash has not alleged that Richards was

physically present in New York when he committed them.  Bank Brussels Lambert v. Fiddler

Gonzalez & Rodriguez, 171 F.3d 779, 789-90 (2d Cir. 1999) ("[A] defendant's physical presence

in New York is a prerequisite to jurisdiction under § 302(a)(2).").  The purported tortious act (or

failure to act) that caused Ash's loss occurred in Chicago, where Richards continued to retain

and manage the funds at issue in his bank account after Ash demanded them.  Even if any oral

repudiation were an actionable tort, Ash does not contend that Richards refused to return most of

the funds at issue—$750,000—when he was in New York.  Rather, Ash complains that while

residing in Chicago, Richards failed to respond to Ash's October 17, 2012 email demand for

$750,000.  (Compl. ¶¶ 30-31.)

### IV.  CPLR § 302(a)(3): Tort Without the State Causing Injury Within the State

N.Y. CPLR § 302(a)(3) authorizes personal jurisdiction over a defendant who

> commits a tortious act without the state causing injury to person or property within the
> state . . . if he
> (i)    regularly does or solicits business, or engages in any other persistent course of
>        conduct, or derives substantial revenue from goods used or consumed or services
>        rendered, in the state, or
> (ii)   expects or should reasonably expect the act to have consequences in the state and
>        derives substantial revenue from interstate or international commerce . . . .

The Court need not consider whether Richards' business or revenue contacts satisfy subsections

(i) or (ii) because Ash has failed to allege a qualifying injury within New York.  "[C]ourts

determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction

must generally apply a situs-of-injury test, which asks them to locate the 'original event which

caused the injury.'"  Bank Brussels Lambert, 171 F.3d at 791 (citation omitted).  "The situs of

8

the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." Whitaker, 261 F.3d at 209 (quoting Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990)).  In commercial tort cases, the injury and the tort will typically coalesce around the same location, for example where the defendant's conversion of the property in fact occurred.  See Popper v. Podhragy, 48 F. Supp. 2d 268, 274 (S.D.N.Y. 1998).

As explained earlier, Ash's loss was purportedly caused by actions taken in Chicago, where Richards continued to retain the funds after Ash's request for repayment.  Cf. Whitaker, 261 F.3d at 209 (finding that the location of the "original event which caused the alleged injury" was the "actual withholding of payment" due and owing to the plaintiff); Villanova v. Harbilas, 2010 U.S. Dist. LEXIS 37797, at *12-13 (S.D.N.Y. April 12, 2010) (finding that the situs-of-injury in a fraud, conversion, and breach of fiduciary duty case was in Pennsylvania where account was located, and where any improper management would have occurred).  Ash's allegation that he "suffer[ed] . . . economic damages in New York is insufficient, alone, to establish a 'direct' injury in New York for N.Y. C.P.L.R. § 302(a)(3) purposes."  See Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 38 (2d Cir. 2010) (citing Fantis Foods, 402 N.E.2d at 125-26); accord Whitaker, 261 F.3d at 209 ("The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.") (citation omitted).  Ash has not alleged an injury other than financial loss, or that he suffered financial consequences in New York for reasons other than his domicile in the state.

Since Richards's contacts do not suffice under New York's long arm statutes, the Court need not conduct the due process constitutional analysis.  The Court also need not consider the merits of Richards's motion to dismiss for failure to state a claim pursuant to 12(b)(6).

## V. Ash's Request to Transfer

Ash requests a transfer to the Northern District of Illinois pursuant to 28 U.S.C. 1406(a); Richards opposes such a transfer. While the Court does not believe that Ash filed the lawsuit in this district in bad faith, Ash has not identified any prejudice that would result from dismissal, such as a statute of limitations that would prohibit re-filing in the proper forum. The Court's dismissal without prejudice permits Ash to expeditiously re-file in the Northern District of Illinois, which achieves the same result as a transfer.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the defendant's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. Rule 12(b)(2). The Clerk of the Court is directed to enter judgment and terminate this case.

Dated: New York, New York
      September 10, 2013

SO ORDERED

PAUL A. CROTTY
United States District Judge